1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                         FOR THE DISTRICT OF ARIZONA

10

11   Michael A. Leon,                    )    No. CV 10-587-TUC-DCB (HCE)
                                         )
12               Plaintiff,              )    **REPORT & RECOMMENDATION**
                                         )
13   vs.                                 )
                                         )
14                                       )
     Danaher Corporation; et. al.,       )
15                                       )
                 Defendants.             )
16                                       )
     _____   )
17

18

19          Pending before the Court are: (1) Defendants' Motion to Dismiss[1] (Doc. 13); (2)

20   Plaintiff's First Amended Complaint (Doc. 16); (3) Plaintiff's Opposition to Defendants'

21   Motion to Dismiss (Doc. 17); (4) Defendants' Amended Reply in Support of Defendants'

22   Motion to Dismiss (hereinafter "Defendants' Amended Reply") (Doc. 22); and (5) Plaintiff's

23   Supplemental Response in Opposition to Defendants' Motion to Dismiss[2] (hereinafter

24   _____

25          [1]Defendants have requested oral argument.  However, upon review of the briefs, the
26   Court has determined that oral argument is not required to resolve the pending motion.

27          [2]Plaintiff did not request leave of Court to file his Supplemental Response.
     Defendants have not objected to the filing.  The Court will consider the Supplemental
28   Response in resolving Defendants' Motion.

1  "Plaintiff's Supplemental Response") (Doc. 23).  For the following reasons, the Magistrate
2  Judge recommends that the District Court grant Defendants' Motion to Dismiss.

3  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

4       On October 4, 2010, Plaintiff was granted *in forma pauperis* status to file his *pro se*
5  Complaint in which Plaintiff alleged this Court has jurisdiction pursuant to Title VII of the
6  Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, (hereinafter "Title VII") and the
7  Americans With Disabilities Act, 42 U.S.C. § 12101 *et seq.*, (hereinafter "ADA") (Docs 1,
8  4).   Plaintiff further alleged that he was the victim of racial harassment (Count I); race
9  discrimination (Count II); disability discrimination (Count III); and retaliation (Counts IV,
10  V).

11       On December 20, 2010, Defendants filed the pending Motion to Dismiss.  Plaintiff
12  filed a response thereto as well as a First Amended Complaint.  In his First Amended
13  Complaint, Plaintiff asserts that his action is brought pursuant to Title VII and the ADA.
14  (*See* First Amended Complaint, pp. 21, 23, 25, 28). Plaintiff alleges racial harassment (Count
15  I); race discrimination (Count II); disability discrimination (Count III); and retaliation
16  (Counts IV, V).   Named Defendants are: Danaher Corporation; Pacific Scientific;
17  Securaplane Technologies, Inc.; Janice Williams, Power Group Manager; Lorrie Guzeman,
18  Human Resources Manager; Blane Boynton, Program Manager; and Dr. Michael Boost,
19  Chief Technical Officer.[3]

20       Defendants contend that Plaintiff's First Amended Complaint "fails to cure the
21  incurable deficiencies of the previous Complaint..." and, thus, the action should be dismissed
22  despite the filing of the Amended Complaint.    (Defendants' Amended Reply, p. 2).
23  Defendants also point out that this is not the first lawsuit filed by Plaintiff concerning his
24  former employment.  In March 2009, Plaintiff filed suit in Arizona state court against all
25  Defendants named in the instant action, but for Danaher Corporation and Pacific Scientific.
26  (*See* Defendants' Motion, p. 2 & Exh. 1).  The case was removed to the District Court for the

27  _____

28       [3]The named Defendants are the same as those named in the original complaint.

1  District of Arizona on the basis that, *inter alia,* Plaintiffs' references to Title VII and the

2  ADA in the state court complaint constituted claims arising under federal law.  (*See Id.*).

3  However, the matter was remanded to the state court after Plaintiff informed the District

4  Court that he had not intended to allege any federal claims against Defendants,  he

5  "eschew[ed] claims based on federal law", and he only intended to pursue claims of

6  intentional infliction of emotional distress, negligent infliction of emotional distress, invasion

7  of privacy, slander and defamation.  (*Id.*; *see also* Amended Complaint (Doc. 1, Exh. 2) *filed*

8  *in Leon v. Securaplane Technologies, Inc., et. al.*, CV 09-390-TUC-CKJ (JCG)).  The state

9  action, which resulted from the remand directed in CV 09-390, was pending when Plaintiff

10  initiated the instant action.  (*See* Plaintiff's Supplemental Response, p. 4 (indicating that the

11  matter is set for trial in June 2011)).  The record also reflects that in October 2010, Plaintiff

12  filed an action in Arizona state court against Pacific Scientific,  Danaher Corporation, and

13  Securaplane Technologies, Inc. (*Id.*).

14  **II.    STANDARD**

15        A.    Introduction

16        In their Motion to Dismiss, Defendants assert that Plaintiff's Complaint should be

17  dismissed for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and for

18  failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).   In their Amended Reply,

19  Defendants contend that Plaintiff's Amended Complaint is subject to dismissal on the same

20  grounds.

21        B.    Dismissal for Lack for Subject Matter Jurisdiction

22        Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, dismissal is

23  appropriate when the court lacks subject matter jurisdiction over a claim.  Fed. R. Civ.

24  12(b)(1). Subject matter jurisdiction involves the power of the court to hear the plaintiff's

25  claims in the first place and, therefore, imposes upon courts an affirmative obligation to

26  ensure that they are acting within the scope of their jurisdictional power.  Because federal

27  courts are courts of limited jurisdiction, it is presumed that a cause lies outside the

28  jurisdiction of federal courts unless proven otherwise. *Kokkonen v. Guardian Life Ins. Co.,*

1   511 U.S. 375, 377 (1994).  The plaintiff bears the burden of establishing that jurisdiction

2   exists.  *Thornhill Publishing Co. v. General Telephone & Electronics Corp.,* 594 F.2d 730,

3   733 (9th Cir. 1979).

4           "'A motion to dismiss for lack of subject matter jurisdiction may either attack the

5   allegations of the complaint or may...'" attack the existence of subject matter jurisdiction as

6   a matter of fact.  *National Union Fire Insur. Co. v. ESI Ergonomic Solutions, LLC.,* 342

7   F.Supp.2d 853 (D. Ariz. 2004) *(quoting Thornhill Publishing Co.,* 594 F.2d at 733). "When

8   a motion to dismiss attacks the allegations of the complaint as insufficient to confer subject

9   matter jurisdiction, all allegations of material fact are taken as true and construed in the light

10  most favorable to the nonmoving party." *Id. (citing Federation of African Amer. Contractors*

11  *v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir. 1996)). Where the jurisdictional issue is

12  separable from the merits of the case, the court may consider the evidence presented with

13  respect to the jurisdictional issue, resolving factual disputes if necessary. *Thornhill,* 594 F.2d

14  at 733.  "When the motion is a factual attack on subject matter jurisdiction, a defendant may

15  'rely on affidavits or any other evidence properly before the Court.'" *National Union Fire*

16  *Insur. Co*., 342 F.Supp.2d at 861  *(citing St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th

17  Cir. 1989)).  In the instance of a factual challenge, no presumption of truthfulness attaches

18  to the plaintiff's allegations, and the existence of disputed material facts will not preclude the

19  court from evaluating the merits of jurisdictional claims. *Thornhill,* 594 F.2d at 733.

20          When a motion to dismiss is based on more than one ground, the court should

21  consider the Rule 12(b)(1) challenge first because the other grounds will become moot if the

22  court lacks subject matter jurisdiction. 5 Charles Alan Wright, Arthur R. Miller & Mary Kay

23  Kane, *Federal Practice & Procedure* (hereinafter "*Federal Practice & Procedure*"), §1350

24  (3rd. ed. 2011).

25          C.      Dismissal for Failure to State a Claim

26          "'To survive a motion to dismiss [for failure to state a claim], a complaint must

27  contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

28  on its face;' that is, plaintiff must 'plead[ ] factual content that allows the court to draw the

- 4 -

1   reasonable inference that the defendant is liable for the misconduct alleged.'" *Telasaurus*

2   *VPC, LLC. v. Power,* 623 F.3d 998, 1003 (9th Cir. 2010) (*quoting Ashcroft v. Iqbal,* __ U.S.

3   __, 129 S.Ct. 1937, 1949 (2009)).   In determining whether the complaint states a claim, the

4   court must first separate  factual allegations from legal conclusions. *Iqbal*, ___ U.S.___, 129

5   S.Ct. at 1949-1950; *see also Telasaurus,* 623 F.3d. at 1003 (the court begins its review "'by

6   identifying pleadings that, because they are no more than conclusions, are not entitled to the

7   assumption of truth.'" (*quoting Iqbal,* __ U.S. __, 129 S.Ct. at 1950).   Thus, "[t]hreadbare

8   recitals of the elements of a cause of action, supported by mere conclusory statements, do not

9   suffice." *Iqbal*, ___ U.S.___, 129 S.Ct. at 1949.   After eliminating such unsupported legal

10  conclusions, the court will next identify "'well-pleaded factual allegations,' which we assume

11  to be true, 'and then determine whether they plausibly give rise to an entitlement to relief.'"

12  *Telasaurus,* 623 F.3d. at 1003 (*quoting Iqbal*, __ U.S. __, 129 S.Ct. at 1950).   Determining

13  plausibility is a "context-specific task..." that requires the court to "draw on its judicial

14  experience and common sense." *Iqbal*, __ U.S. __, 129 S.Ct. at 1950.   A complaint cannot

15  survive dismissal where the court can only infer that a claim is merely possible rather than

16  plausible. *Id.*

17          As a general rule, the district court may not consider any material beyond the

18  pleadings when resolving a motion to dismiss for failure to state a claim. *Lee v. City of Los*

19  *Angeles,* 250 F.3d 668, 688 (9th Cir. 2002), *impliedly overruled on other grounds as*

20  *discussed in Gallardo v. DiCarlo,* 203 F.Supp.2d 1160, 1162 n.2(C.D. Cal. 2002).   However,

21  the court may consider material submitted as part of the complaint, such as the EEOC

22  Dismissal and Notice which Plaintiff herein has attached as an exhibit to his First Amended

23  Complaint. *Id.*   Further, the court may consider documents not physically attached to the

24  complaint if the documents' authenticity are not contested and the plaintiff's complaint

25  necessarily relies on them. *Id.*   Moreover, the court may consider materials of which it may

26  take judicial notice, including matters of public record. *See Lee,* 250 F.3d at 688-689; *Shaw*

27  *v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995) ("In deciding whether to dismiss a claim

28  under Fed.R.Civ.P. 12(b)(6), a court may look beyond the plaintiff's complaint to matters of

1   public record." (citation omitted)); *Cunningham v. Litton Indus.,* 413 F.2d 887, 889 n.2 (9th

2   Cir. 1969) (taking judicial notice of EEOC proceeding).  Defendants have attached to their

3   Motion to Dismiss Plaintiff's August 19, 2010 Notice of Charge of Discrimination

4   (hereinafter "Charge") filed with the EEOC. (Defendant's Motion ,Exh. 2).  Plaintiff's First

5   Amended Complaint necessarily relies on such Charge: he alleges he filed the August 2010

6   Charge and he attaches the EEOC's Dismissal and Notice of Rights with regard to that

7   Charge.  (*See* First Amended Complaint, p. 2 at ¶8 and Exh. A).  Further the Court takes

8   judicial notice of the EEOC proceedings in Plaintiff's case, including the EEOC Charge. *See*

9   *Cunningham,* 413 F.2d at 889 n.2.  The Court also takes judicial notice of the two state court

10  actions filed by Plaintiff, including the attempted removal, discussed *supra* at I., which are

11  matters of public record.

12          When the plaintiff is *pro se,* the complaint must be liberally construed in the interests

13  of justice. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (*pro se* pleadings are held to "less

14  stringent standards than formal pleadings drafted by lawyers..."); *Hebbe v. Pliler,* 627 F.3d

15  338, 342 (9th Cir. 2010) (courts must "continue to construe *pro se* filings liberally....");

16  *Johnson v. Reagan,* 524 F.2d 1123, 1124 (9th Cir. 1975)("Pleadings should be liberally

17  construed in the interests of justice, particularly when a pleader is not learned in the law.").

18  This is especially true when a plaintiff appears *pro se* in a civil rights case. *See Ferdik v.*

19  *Bonzelet,* 963 F.2d 1258, 1261 (9th Cir. 1992).  Nonetheless,  *"[p]ro se* litigants must follow

20  the same rules of procedure that govern other litigants." *King v. Atiyeh,* 814 F.2d 565, 567

21  (9th Cir. 1987); *see also Ghazali v. Moran,* 46 F.3d 52 (9th Cir. 1995) ("*pro se* litigants are

22  bound by the rules of procedure.").

23          If the Court determines that a pleading could be cured by the allegation of other facts,

24  a *pro se* litigant is entitled to an opportunity to amend a complaint before dismissal of the

25  action.  *See Lopez v. Smith*, 203 F.3d 1122, 1127-29 (9th Cir. 2000) (*en banc*). The Court

26  should not, however, advise the litigant how to cure the defects.  This type of advice "would

27  undermine district judges' role as impartial decisionmakers."  *Pliler v. Ford*, 542 U.S. 225,

28  231 (2004); *see also Lopez*, 203 F.3d at 1131 n.13 (declining to decide whether the court was

1   required to inform a litigant of deficiencies).

2   **III.    ANALYSIS**

3       A.    Effect of Plaintiff's First Amended Complaint

4           Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a plaintiff may

5   amend the complaint "once as a matter of course within: (A) 21 days after serving it, or (B)

6   if the pleading is one to which a responsive pleading is required, 21 days after service of a

7   responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f),

8   whichever is earlier."  Fed.R.Civ.P. 15(a)(1).   Plaintiff's First Amended Complaint was

9   filed on January 10, 2011 and within 21 days after Defendants served their December 20,

10  2010 Motion to Dismiss pursuant to Rule 12(b).  (*See* Defendants' Motion p.10 (indicating

11  Motion was served on December 20, 2010 by mail and electronic means; *see also*

12  Fed.R.Civ.P. 6 (calculating time).  Therefore, Plaintiff's First Amended Complaint is timely

13  under Rule 15(a)(1)(B).

14          An amended complaint supersedes a prior complaint as a pleading.  *Hal Roach*

15  *Studios, Inc., v. Richard Feiner & Co.,* 896 F.2d 1542, 1546 (9th Cir. 1990).  Generally, once

16  an amended complaint is filed, any subsequent motion made by an opposing party should be

17  directed at the amended pleading.  *See* 6 *Federal Practice & Procedure* §1476 at 637-638

18  (3rd ed. 2011).  However, "defendants should not be required to file a new motion to dismiss

19  simply because an amended pleading was introduced while their motion was pending.  If

20  some other defects raised in the motion remain in the new pleading, the court simply may

21  consider the motion as being addressed to the amended pleading.  To hold otherwise would

22  be to exalt form over substance."  *Id.* (footnote omitted); *see also Jordan v. City of*

23  *Philadelphia,* 66 F.Supp.2d 638, 641 n.1 (E.D. Pa. 1999); *Datastorm Technologies, Inc. v.*

24  *Excalibur Communications, Inc.,* 888 F.Supp. 112,  (N.D. Cal. 1995); *Patton Electric* Co.,

25  Inc., *v. Rampart Air, Inc.*, 777 F.Supp. 704, 712 (N.D. Ind. 1991).

26          Although Defendants' Motion to Dismiss was directed at Plaintiff's original

27  complaint, which is now void in light of the filing of Plaintiff's First Amended Complaint,

28  Defendants contend that Plaintiff's First Amended Complaint suffers from the same

deficiencies that are addressed in their Motion to Dismiss. (*See* Defendants' Amended

Reply).   Subsequent to the filing of Defendants' Amended Reply, Plaintiff filed a

Supplemental Response which the Court considers herein.  On the instant record, "the Court

will consider the Motion to Dismiss to be directed [to]...the...First Amended Complaint.  For

the Court to do otherwise would exalt form over substance." *Datastorm Technologies, Inc.,*

888 F.Supp. at  114 (*citing Patton Electric Co.,* 777 F.Supp. at 712; 6 *Federal Practice and*

*Procedure* § 1476 at 556-558 (2d ed. 1990)).

   B.  Allegations in Plaintiff's Amended Complaint and EEOC Charge

     1. Amended Complaint

  Plaintiff alleges that he "is a severely disabled man over the age of 40 and of

American Indian and Hispanic origin." (First Amended Complaint, p. 1).  He also alleges

that he suffers from heart disease and has steel implants in his left wrist and forearm, left

femur bone from the knee to the upper thigh, right foot, and jaw bone, which he contends

constitute his disability. (*Id.* at p.5).   From 2004 through 2007, Plaintiff was employed as

a Senior Electronic Technician with Defendant Securaplane Technologies, Inc. (hereinafter

"Securaplane").[4]

  Plaintiff alleges that in October 2006, he advised Defendants Boost, Williams and

others of his safety concerns regarding continued use of a Lithium Ion Battery in conjunction

with a power conversion system. (*Id.* at p.2).   According to Plaintiff, no one heeded his

warning and, in November 2006, the battery exploded causing a three-alarm fire.  (*Id.* at p.3).

  Plaintiff alleges that in February 2007, Defendant Williams threatened him with

termination if he did not perform physical duties, such as moving laboratory equipment

weighing up to 300 pounds and installing lights in a new building.  (*Id.* at pp. 5-6).  While

---

[4]Plaintiff alleges that Defendant Securaplane Technologies, Inc. is "now known as
Pacific Scientific, a subsidiary of Danaher Corporation...." (First Amended Complaint, p.
2).  Plaintiff names Pacific Scientific and Danaher Corporation as Defendants.  Defendants
assert that "Securaplane Technologies, Inc. is a wholly-owned subsidiary of DH Holdings
Corporation, which is wholly owned by Danaher Corporation."  (Defendants' Amended
Reply, p. 7; *see also* Defendants' Motion, p.1 n.1).

1   performing these tasks, Plaintiff collapsed. (*Id.*). Plaintiff alleges that his requests to use his

2   accumulated sick time in February 2007 were denied. (*Id.* at p.6).

3       Plaintiff alleges that on March 1, 2007, he informed Defendant Boynton of a safety

4   defect in certain power converters and that the "converters could not be shipped to aircraft

5   without being reworked to eliminate this fault...." (*Id.*). Nonetheless, Defendant Boynton

6   directed Plaintiff to ship the converters. (*Id.* at p.7). Despite Defendant Boynton's directive,

7   Plaintiff left work without shipping the converters. (*Id.*). Plaintiff further alleges that on the

8   evening of March 1, 2007, Defendant Williams called him at home to instruct him to ship the

9   converters. (*Id.*). When Plaintiff informed Defendant Williams of his right to use sick time,

10  Defendant Williams allegedly "threatened [him] not to take the day off, but to come to work

11  and ship the power converters in question.  She further instructed Plaintiff that a written

12  reprimand would be waiting for him...if the Plaintiff chose to utilize one of his sick days."

13  (*Id.*). Plaintiff did not return to work, but used sick time. (*Id.*). When Plaintiff returned to

14  work, he was reprimanded "for leaving work without shipping the power converters...as

15  directed by [Defendant] Blane Boynton and for using a sick day..." (*Id.* at p. 8).  On that

16  same date, Plaintiff sought medical attention and was placed on medical leave for the

17  following three weeks. (*Id.*).  Plaintiff alleges that upon his return to work on March 26,

18  2007, he was disciplined for failing to ship the power converters and Defendant Guzeman

19          verbally instructed that do [sic] to his appearance, he fit the profile of someone
20          who shoots multiple people in shopping malls.  This is a violation of EEOC
            laws under Title VII with respect to racial, national origin discriminatory
21          practices. Plaintiff is of Native American and Hispanic heritage. He wears a
            long braid of hair to his waist and has facial scarring which contributes to his
22          appearance. He also wore a leather western style duster to keep warm.

23  (*Id.* at p.8; *see also id.* at p. 12).

24          Plaintiff ultimately shipped the power converters and, on March 30, 2007, "filed an

25  FAA whistle blower complaint concerning..." the matter. (*Id.* at p.9).

26          Plaintiff also alleges that in 2007 he received reprimands for going to doctor's

27  appointments and that Defendant Guzeman shared with other employees information

28  concerning Plaintiff's background and health issues. (*Id.* at pp. 9-12).

On April 5, 2007, Plaintiff was "sent home under the pretext of lying to fire investigators", and his employment was "officially terminated on May 11, 2007." (*Id.* at p.13). Plaintiff has not returned to his former work location since May 11, 2007. (*Id.*).

Plaintiff alleges that in 2009, a Department of Labor proceeding occurred before an administrative law judge with regard to Plaintiff and Defendants. (*Id.* at pp. 12-14). Plaintiff alleges that in April 2010, Plaintiff had a "chance meeting at a laundry facility..." with a former Securaplane employee who informed Plaintiff:

> that during the first date of the D[epartment] O[f] L[abor] trial on March 24, 2009, Securaplane had a meeting with all employees. They were instructed to fear for their lives and to report any sightings of Plaintiff to the newly hired security forces that were now patrolling the grounds. He further informed Plaintiff that there was an image of Plaintiff kept at the receptionist's desk that portrayed Plaintiff in a menacing and intimidating way.

(*Id.* at p.14). Plaintiff alleges that he was portrayed in a format characterizing him as an "Outlaw" or "Wanted" and "as a danger." (*Id.* at p.15). Employees were instructed that he was considered to be armed and dangerous. (*Id.*).

Plaintiff alleges that in October 2010 through December 2010, his resume was sent to Securaplane by Aerotech Aviation for several positions and that, in violation of Title VII, he was never called for an interview despite that he "is more than qualified for..." the positions. (*Id.* at p.16).

Plaintiff alleges that security measurers were increased at Securaplane in 2009 in relation to the Department of Labor proceeding. Plaintiff alleges that officers were on the look-out for him and his son and that his son was characterized by Defendants as a "co-conspirator". (*Id.* at p. 28).

In Count I of his Amended Complaint, which is titled "Racial Harassment of Plaintiff....", Plaintiff claims, *inter alia,* that he

> was subjected to unwelcome, offensive and harassing discriminatory conduct during his employment with Defendant Securaplane Technologies as well as post-employment by Defendant Securaplane Technologies and its agents by reason of his race and disability.

(*Id.* at p. 20). Plaintiff alleges that during his employment and post-employment, "as recent as June 2009,..." and continuing thereafter he has been "held up to great derision and

1  embarrassment with former workers, friends, members of the community and family...." (*Id.*
2  at p. 21).

3     In Count II, titled "Race Discrimination", Plaintiff alleges that Defendants engaged
4  in such discrimination during his employment and "as recent as June 2009,..."  and
5  continuing thereafter,  he has been "held up to great derision and embarrassment with former
6  workers, friends, members of the community and family...." (*Id.* at pp 21-22).

7     In Count III, titled "Disability Discrimination", Plaintiff claims, *inter alia,* that in
8  2007 he "was repeatedly harassed while on medical leave" and although he was "seriously
9  ill..." he had been "subjected to an onslaught by the company for..." using medical leave. (*Id.*
10  at pp. 22-23).    According to Plaintiff, Defendants' actions violated the ADA.   Further
11  according to Plaintiff, "as recent as June 2009,..." and continuing thereafter, he has been
12  "held up to great derision and embarrassment with former workers, friends, members of the
13  community and family...."  (*Id.*).

14     In Count IV, titled "Retaliation", Plaintiff claims that he has been retaliated against
15  in violation of  Title VII and the ADA.  (*Id.* at p.24).  He alleges that "as recent as June
16  2009,..." and continuing thereafter, he has been "held up to great derision and embarrassment
17  with former workers, friends, members of the community and family...."  (*Id.* at p. 25).

18     In Count V, also titled "Retaliation", Plaintiff cites his activity, including the filing
19  of a whistleblower complaint, regarding safety issues at Securaplane. (*Id.* at pp. 25-28).  He
20  claims that "the unfavorable personnel actions directed at..." him were made in retaliation.
21  (*Id.* at p.28).  He alleges that as recent "as June 2009,..." and continuing thereafter, he has
22  been "held up to great derision and embarrassment with former workers, friends, members
23  of the community and family...."  (*Id.*).  Plaintiff asserts in Count V that "[t]his action is
24  brought pursuant to Title VII and..." the ADA.  (*Id.*).

25       2. EEOC Charge

26     On August 19, 2010, Plaintiff filed a Notice of Charge of Discrimination with the
27  EEOC claiming retaliation and discrimination based upon race, national origin, disability and
28  retaliation. (Defendants' Motion, Exh. 2). Specifically, Plaintiff claimed retaliation for filing

a whistleblower complaint regarding "defective equipment/parts and ever since then I have been retaliated against." (*Id.*). Plaintiff asserted that "Human Resources" referred to him as having "a profile of a violent person that shoots people in shopping malls because of my appearance...", and provided "bad references causing me not to obtain other employment after my discharge in May 2007. Even to this day, the slander is ongoing and they continue to defame my character among other employees and co-workers, this has a poisoning effect on the small electronic community for Tucson employment." (*Id.*). Plaintiff also alleged that his February 2007 request for reasonable accommodation was denied, he was reprimanded for taking sick time and going to medical appointments, and his medical information was shared with employees. (*Id.*).     Plaintiff claimed that in August 2009 through 2010, Defendants posted at entrances to Securaplane, a poster depicting him "in a dangerous and threatening light...." (*Id.*).  He also claimed that "[a]fter the fire when [he]...truthfully explained how management failed to heed his requests about faulty equipment..." Defendants began "insisting that he had a scary appearance (long braided Indian tall–with facial scars)...." Plaintiff further claimed that Defendant Guzeman gave perjured testimony at the Department of Labor hearing. (*Id.*).

On September 15, 2010, the EEOC dismissed Plaintiff's claim and notified him of his right to file a lawsuit. (First Amended Complaint, Exh. A). Thereafter, Plaintiff initiated the instant action.

### C.     Defendants' Motion to Dismiss and Defendants' Amended Reply

Defendants contend that because individual employees are not subject to liability in their individual capacities under Title VII and the ADA,  this action should be dismissed against the individual defendants.  Defendants further contend that the majority of Plaintiff's claims are untimely and Plaintiff has failed to exhaust the remainder of his claims. Defendants also argue that all claims against Defendant Danaher Corporation must be dismissed and that Plaintiff fails to state a claim for retaliation.

#### 1.     Individual Defendants

Defendants are correct that neither Title VII nor the ADA impose individual liability

1   on employees. *Miller v. Maxwell's Intern. Inc.,* 991 F.2d 583, 587 (9th Cir. 1993) (Title VII);

2   *Walsh v. Nevada Dep't. of Human Resources,* 471 F.3d 1033, 1037-38 (9th Cir. 2006) (Title

3   I of the ADA). Because individual defendants cannot be held personally liable under Title

4   VII and the ADA–the statutes pursuant to which Plaintiff brings this action–all claims against

5   Defendants Williams, Guzeman, Boynton and Boost in their individual capacities should be

6   dismissed.

7           2.      Timeliness with regard to allegations of discrimination during

8                   employment

9           Defendants argue that Plaintiff's claims arising from events allegedly occurring during

10  his employment should be dismissed because Plaintiff failed to timely exhaust administrative

11  remedies under Title VII and the ADA.

12          A plaintiff must file a timely charge of discrimination with the EEOC as a prerequisite

13  to filing suit under Title VII and the ADA. *See* 42 U.S.C. §2000e-5; *Santa Maria v. Pacific*

14  *Bell,* 202 F.3d 1170,  1176 (9th Cir. 2000) (*citing* 42 U.S.C. §12117(a) (ADA provision

15  incorporating the enforcement procedures set forth in Title VII, 42 U.S.C. §2000e-5)),

16  *overruled on other grounds by Socop-Gonzales v. INS,* 272 F.3d 1170, 1175 (9th Cir. 2001).

17  Under Title VII and the ADA, an Arizona plaintiff must file the charge of discrimination

18  within 300 days of the  alleged discriminatory act(s). *Santa Maria,* 202 F.3d at 1176; *Shiban*

19  *v. Intel Corp.,* 2002 WL 31371971, *2 n.2 (D.Ariz. Mar. 28, 2002) (in Arizona, which is a

20  "dual filing state[]...",  the time limit for filing a charge of discrimination is 300 days); *see*

21  *also EEOC v. Commercial Office Products Co.,* 486 U.S. 107 (1988).[5]

22          In the Ninth Circuit,

23          [t]he time period for filing a complaint of discrimination begins to run when
            the facts that would support a charge of discrimination would have been
24

25  _____

26  [5]In cases arising in states that are not dual-filing states, the EEOC charge must be filed
    within 180 days. *See Santa-Maria,* 202 F.3d at 1176. The parties do not dispute that the
27  300-day filing period, as opposed to the 180-day period, applied to Plaintiff. (*See*
    Defendant's Motion, Exh. 2 (Plaintiff's preprinted Charge of Discrimination form refers to
28  both the EEOC and the Arizona Attorney General's Office Civil Rights Division)).

apparent to a similarly situated person with a reasonably prudent regard for his rights.

*Boyd v. United States Postal Serv.,* 752 F.2d 410, 414 (9th Cir. 1985) (citation omitted). "[T]he question is when the operative decision was made, not when the decision is carried out." *RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1059 (2002).

The record is clear that Plaintiff filed his EEOC Charge on August 19, 2010, nearly three years after his employment with Securaplane ended on May 11, 2007. (Defendant's Motion, Exh. 2). To the extent that Plaintiff bases his Title VII and ADA claims in Counts I and II and his retaliation[6] claims in Counts IV and V on acts occurring during his employment with Securaplane in 2006 and 2007, Defendants are correct that such claims are time-barred. Plaintiff's allegations demonstrate that he was aware of the alleged discriminatory conduct in 2006 and 2007. Yet, Plaintiff did not file his charge of discrimination until 2010.

Plaintiff's "[f]ailure to file an EEOC charge within the prescribed 300-day period is not a jurisdictional bar, but it is treated as a violation of a statute of limitations, complete with whatever defenses are available to such a violation, such as equitable tolling and estoppel." *Santa Maria,* 202 F.3d. at 1176 ("this principle holds equally true for ADA suits..." and Title VII suits).

"Equitable estoppel focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit, whereas equitable tolling focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant." *Id.* A finding of equitable estoppel may be based on factors, including but not limited to: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations; (2) evidence of improper purpose on the part of the defendant or of the defendant's actual or

_____

[6]Plaintiff is clear that his retaliation claims in Counts IV and V are brought pursuant to Title VII and the ADA. (*See* Amended Complaint, p. 25 (Count IV: "This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and Americans with Disabilities Act of 1990) (ADA).")); *Id.* at p. 28 (Count V: "This action is brought pursuant to Title VII of the Civil Rights Act of 1964 and Americans with Disabilities Act of 1990) (ADA).").

1    constructive knowledge of the deceptive nature of its conduct; and (3) the extent to which

2    the purposes of the limitations period have been satisfied. *Id.* (*citing Naton v. Bank of Calif.,*

3    649 F.2d 691, 696 (9th Cir. 1981)).  Plaintiff has neither alleged nor argued that the doctrine

4    of equitable estoppel applies in his case.

5           The Court may apply the doctrine of equitable tolling

6           if, despite all due diligence, a plaintiff is unable to obtain vital information
            bearing on the existence of his claim. *See Holmberg v. Armbrecht*, 327 U.S.
7           392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Unlike equitable estoppel,
            equitable tolling does not depend on any wrongful conduct by the defendant
8           to prevent the plaintiff from suing. Instead it focuses on whether there was
            excusable delay by the plaintiff. If a reasonable plaintiff would not have
9           known of the existence of a possible claim within the limitations period, then
            equitable tolling will serve to extend the statute of limitations for filing suit
10          until the plaintiff can gather what information he needs.

11   *Id.* at 1178.  *See also Coppinger-Martin v. Solis*, 627 F.3d 745, 750 (9th Cir. 2010) (same).

12   Plaintiff has neither alleged nor argued that the doctrine of equitable tolling applies in his

13   case. The record reflects that Plaintiff was well aware of his claims within the limitations

14   period.  Moreover, even if Plaintiff were not aware of his claims within 300 days of the

15   alleged 2006 and 2007 events, his complaint filed in June 2009 in Arizona state court which

16   was removed to this Court and, thereafter remanded, reflects that Plaintiff was aware at that

17   time that Defendants' alleged conduct implicated Title VII and the ADA. (*See* Plaintiff's

18   First Amended Complaint (Doc. 1, Exh. 2, pp. 6, 11-12  *filed in Leon v. Securaplane*

19   *Technologies Inc., et. al.,* CV 09-390-TUC-CKJ (JCG)).  Yet, Plaintiff did not file a charge

20   with the EEOC until August 19, 2010.  Consequently, Plaintiff's claims are time-barred.

21          3.    Claims of discrimination post-employment

22          Plaintiff's employment with Securaplane ended on May 11, 2007.  In his First

23   Amended Complaint, Plaintiff identifies post-termination acts by Defendants that he claims

24   violates Title VII and the ADA.  Specifically, Plaintiff alleges that in 2010:  he learned that

25   in 2009 Securaplane "instructed [employees] to fear for their lives and to report any sightings

26   of Plaintiff..." and that his image was posted "at the receptionist's desk that portrayed

27   Plaintiff in a menacing and intimidating way" in a "'Wanted' or 'Outlaw' format...." (First

28   Amended Complaint, pp. 14-15); Defendants contracted with Oro Valley Police Department

"for security measures...to foot patrol Securaplane premises...for Plaintiff...and his son" (*Id.* at pp. 17-18); and that he and his son were under surveillance (*Id.*).  Plaintiff also alleges that on October 5, 2010, October 13, 2010, October 22, 2010, November 19, 2010, and December 1, 2010 Aerotech Aviation[7] sent his resume to Securaplane for various open job postings for which he was qualified and he "was never called back or scheduled for a possible interview; this shows continued discriminatory practice that is still being displayed."  (*Id.* at p. 16).

Under Title VII's anti-discrimination provision, it is an unlawful for an employer:

> To fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. §2000e-2(a).  Under Title VII's anti-retaliation provision, it is unlawful "for an employer to discriminate against any of his employees or applicants for employment,...[or] to discriminate against any individual,...because he has  opposed any practice made an unlawful employment practice by this subchapter [*i.e.,* Title VII]*,* or because he has made a charge, testified, assisted or participated in any manner in an investigation proceeding, or hearing under this subchapter." 42 U.S.C. §2000e-3(a).  The language of Title VII's anti-discrimination provision is narrower than the anti-retaliation provision and focuses on actions that affect employment, alter the conditions of the workplace or affect the terms and conditions of employment.  *See Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 61-67 (2006).  In contrast, Title VII's anti-retaliation provision is much broader and extends "beyond workplace-related or employment-related retaliatory acts and harm."  *Id.* at 67; *see also Brooks v. City of San Mateo,* 229 F.3d 917, 929 (9th Cir. 2000)(footnote omitted) ("Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion."); *O'Brien v. Sky Chefs, Inc.,* 670 F.2d 864, 869 (9th Cir. 1982) (permitting retaliation claim based on

---

[7]It is not clear why Aerotech Aviation, instead of Plaintiff, would have sent Plaintiff's resumes.

refusal to rehire and negative employment references after termination), *overruled in part on other grounds by Atonio v. Wards Cove Packing Col,* 810 F.2d 1477, 1481-82 (9th Cir. 1987).

Like Title VII, the anti-discrimination provision of the ADA focuses on actions that affect employment:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms conditions and privileges of employment.

42 U.S.C. §12112(a). The ADA also prohibits discrimination "against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. §12203.

The alleged posting of Plaintiff's image, warnings about Plaintiff to other employees, increased security at Securaplane with specific regard to Plaintiff and his son, and surveillance of Plaintiff and his son, all which occurred after Plaintiff's termination, in no way affected Plaintiff's employment, altered the conditions of his workplace, or affected the terms and conditions of his employment. Therefore, Plaintiff fails to state a claim under the anti-discrimination provisions of Title VII and the ADA.

Plaintiff also alleges post-employment retaliation under Title VII and the ADA. (First Amended Complaint, pp. 24-28). A liberal reading of Plaintiff's First Amended Complaint reflects that Plaintiff alleges that Defendants retaliated against him post-employment by the posting of his image at Securaplane, warnings about him to other employees, increased security at Securaplane with specific regard to Plaintiff and his son, and surveillance of Plaintiff and his son. Plaintiff alleges that Defendants' actions were taken in retaliation for his complaints regarding safety issues at Securaplane and his whistleblower activities regarding same. However, "[t]he mere fact that an employee is participating in an investigation or proceeding involving charges of some sort of discrimination...does not automatically trigger the protection afforded by section 704(a) [*i.e.,* 42 U.S.C. §2000e-3]; the underlying discrimination must be reasonably perceived as discrimination prohibited by Title

1   VII."  *Learned v. City of Bellevue,* 860 F.2d 928, 932 (9th Cir. 1988); *see also* 42 U.S.C.

2   §12203 (ADA prohibits retaliation against an individual because such individual has opposed

3   any act or practice made unlawful by the ADA or because such individual has participated

4   in any manner in an investigation, proceeding, or hearing under the ADA).   Here, Plaintiff

5   has not alleged that Defendants retaliated against him post-employment for protected conduct

6   under Title VII and/or the ADA. Nor can the matters about which Plaintiff complained

7   during his employment, which he alleges gave rise to the retaliatory acts, be construed as

8   protected activity under Title VII and the ADA.  Therefore, Plaintiff fails to state a claim for

9   post-employment retaliation with regard to the posting of his image and security measures,

10  including warnings to employees, allegedly taken by Defendants with regard to Plaintiff and

11  his son.

12          With regard to Plaintiff's allegation that Defendants discriminated against him and/or

13  retaliated against him in violation of Title VII and the ADA by not contacting him upon

14  receipt of his resume for job openings at Securaplane for which he was qualified in October,

15  November, and December 2010, Defendants point out that Plaintiff did not file an EEOC

16  charge of discrimination concerning such a claim.  (Defendants' Amended Reply, p.5).

17          Plaintiff's EEOC Charge makes no mention of his unsuccessful attempts to seek

18  employment with Securaplane after his termination. (*See* Defendants' Motion, Exh. 2).

19  Additionally, the dates on which Plaintiff's resume was sent to Securaplane[8] occurred after

20  Plaintiff filed his EEOC Charge in August 2010.

21          The administrative exhaustion requirements set out in Title VII and the ADA apply

22  to claims of retaliation. *See* 42 U.S.C. §2000e-5; 42 U.S.C. 12117(a). Allegations of

23  discrimination not included in the plaintiff's EEOC charge "may not be considered by a

24  federal court unless the new claims are like or reasonably related to the allegations contained

25  in the EEOC charge." *Green v. Los Angeles County Superintendent of Schools,* 883 F.2d

26

27          [8]Plaintiff alleges that Aerotech Aviation sent his resume to Securaplane.  (First

28  Amended Complaint, p. 16).

1   1472, 1475-76 (9th Cir. 1989) (citations and internal quotation marks omitted).  This Court's

2   jurisdiction extends only to allegations that fall "within the scope of the EEOC's *actual*

3   investigation or an 'EEOC investigation which *can reasonably be expected* to grow out of

4   the charge of discrimination.'"  *Equal Employment Opportunity Comm'n v. Farmer Bros.*

5   *Co.,* 31 F.3d 891, 899 (9th Cir. 1994) (*quoting Sosa v. Hiraoka,* 920 F.2d 1451, 1456 (9th Cir.

6   1990))(emphasis in original); *see also Oubichon v. North Am. Rockwell Corp.,* 482 F.2d 569,

7   571 (9th Cir. 1971) ("judicial complaint...may encompass any discrimination like or

8   reasonably related to the allegations of the EEOC charge, including new acts occurring

9   during the pendency of the charge before the EEOC.").  In determining whether a plaintiff

10  has exhausted allegations that he did not specify in his EEOC charge, the Court may consider

11  such factors as the alleged basis of the discrimination, dates of discriminatory acts specified

12  within the charge, perpetrators of discrimination named in the charge, any locations at which

13  discrimination is alleged to have occurred, and the extent to which plaintiff's judicial claims

14  are consistent with the plaintiff's original theory of the case.  *B.K.B. v. Maui Police Dept.,*

15  276 F.3d 1091, 1101 (9th Cir. 2002).

16          Plaintiff's claims of discrimination and/or retaliation based on his 2010 attempts to

17  seek employment at Securaplane are factually distinct from the claims advanced in his EEOC

18  charge.  Plaintiff's EEOC Charge, in pertinent part, focused on Defendants' alleged conduct

19  in retaliation for Plaintiff's whistleblower activity regarding "defective equipment/parts...."

20  (Defendants' Motion, Exh. 2).  Plaintiff asserted that "ever since..." his whistleblower

21  activity he has

22          been retaliated against.  I was accused by Human Resources of having a profile
            of a violent person that shoots people in shopping malls because of my
23          appearance.  I was given bad references causing me not to obtain other
            employment after my discharge in May 2007.  Even to this day, the slander is
24          ongoing and they continue to defame my character among other employees
            and co-workers, this has a poisoning effect on the small electronic community
25          for Tucson employment.

26  (*Id.*).  The allegations in Plaintiff's EEOC Charge are not like or reasonably related to the

27  instant allegation that Securaplane *itself* has refused to consider rehiring Plaintiff based on

28  discriminatory and/or retaliatory motives.

1    Moreover, even if the EEOC Charge could remotely be read to encompass Plaintiff's

2    recent retaliation claim,[9] Plaintiff never alleged in his EEOC Charge nor does he allege in

3    the First Amended Complaint that Defendants retaliated against him because he engaged in

4    protected activity under Title VII or the ADA.  Plaintiff's theory is that he was retaliated

5    against post-employment because he "filed a whistleblower complaint because I reported

6    defective equipment/parts...." (*Id.*; *see also* First Amended Complaint, pp. 24-28).  Because

7    Plaintiff's most recent allegation of retaliation in his First Amended Complaint is  not based

8    upon his involvement in opposing discrimination prohibited by Title VII and/or the ADA,

9    Plaintiff fails to state a claim for relief under Title VII and/or the ADA.  *See Learned,* 860

10   F.2d at 932 (Because the plaintiff never alleged that he opposed any discrimination based

11   upon race, color, religion, sex, or national origin, he could not reasonably have believed that

12   he was discriminated against in violation of Title VII, and because the plaintiff did not allege

13   discrimination prohibited by Title VII in underlying state agency investigation, he cannot

14   claim that he was retaliated against for opposing discrimination or participating in an

15   investigation or proceeding involving charges of Title VII discrimination).  Thus, even if the

16   Court had jurisdiction over Plaintiff's 2010 retaliation claim for refusal to interview him,

17   such claim is subject to dismissal for failure to state a claim.  *See id.*

18           4.      Dismissal

19   For the foregoing reasons, Plaintiff's First Amended Complaint should be dismissed

20   as time-barred with regard to claims arising up to and including his May 11, 2007

21   termination.  Additionally, Plaintiff's First Amended Complaint should be dismissed for

22   failure to state a claim with regard to Plaintiff's allegations of post-employment retaliation

23   consisting of  the posting of his image and security measures, including warnings to

24   employees, allegedly taken by Defendants concerning Plaintiff and his son.  Further,

25

26          [9]No possible reading of Plaintiff's EEOC Charge would support the conclusion that
     the allegations in the Charge are like or reasonably related to the allegation in the First
27   Amended Complaint that Securaplane refused to interview Plaintiff in 2010 in violation of
     the anti-discrimination provisions of Title VII or ADA.
28

1   Plaintiff's First Amended Complaint should be dismissed for failure to exhaust
2   administrative remedies with regard to Plaintiff's post-employment claim of discrimination
3   and retaliation concerning allegations that Securaplane refused to contact him after receipt
4   of his resume for job openings in 2010.  Alternatively, with regard to allegations that
5   Defendants retaliated against Plaintiff by refusing to contact him after receipt of his resume
6   for job openings in 2010, the First Amended Complaint should be dismissed for failure to
7   state a claim.

8         In the Ninth Circuit a plaintiff must be given leave to amend his complaint unless it
9   is absolutely clear that the deficiencies of the complaint could not be cured by amendment.
10  *Noll v. Carlson,* 809 F.2d 1446, 1447 (9th Cir. 1987), *superseded in part by* 28 U.S.C. §
11  1915(e)(2)(B)(ii); *see also Cook, Perkiss and Liehe, Inc. v. Northern Calif. Collection Serv.,*
12  911 F.2d 242, 247 (9th Cir. 1991) ("We have held that in dismissals for failure to state a
13  claim, a district court should grant leave to amend even if no request to amend the pleading
14  was made, unless it determines that the pleading could not possibly be cured by the allegation
15  of other facts.").

16        Plaintiff filed his First Amended Complaint after receipt of Defendants' Motion to
17  Dismiss. The record is clear that Plaintiff's claims arising during his employment up to and
18  including his May 11, 2007 termination are time-barred and, thus, cannot be cured by further
19  amendment of the complaint. Additionally,  amendment of the First Amended Complaint
20  could not cure Plaintiff's claims of post-employment discrimination given that: (1) his claims
21  concerning the posting of his image at Securaplane and other security measures do not fall
22  within the purview of the anti-discrimination and/or anti-retaliation provisions of Title  VII
23  and the ADA; and (2) he has not exhausted administrative remedies concerning his claim that
24  Securaplane's failure to contact him upon receipt of his resume in 2010 was discriminatory
25  or retaliatory, thus rendering the Court without jurisdiction over such a claim.  Alternatively,
26  even if the EEOC Charge somehow encompassed Plaintiff's claim of post-employment
27  retaliation, further amendment of the complaint cannot cure the deficiencies regarding such
28  claim given Plaintiff's contention that the alleged retaliation was based upon his involvement

1   in whistleblower activity and complaints all regarding safety issues and not activity protected

2   under Title VII or the ADA.   Under the instant circumstances, further amendment of

3   Plaintiff's complaint would be futile.   *See Lopez,* 203 F.3d at 1127; *Noll*, 809 F.2d at 1448

4   (*citing Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)).   Therefore, Plaintiff's

5   First Amended Complaint should be dismissed without leave to amend.

6          Because dismissal of Plaintiff's action without leave to amend is warranted for the

7   above-stated reasons, the Court need not address Defendants' other arguments in support of

8   dismissal.

9                    5.      Sanctions

10         In their Amended Reply, Defendants request that the Court impose sanctions pursuant

11  to 28 U.S.C. §1927 and the Court's inherent authority.   Defendants contend that the instant

12  lawsuit is frivolous and that the instant action and Plaintiff's state court actions "are intended

13  solely for the purpose of harassment...."   (Defendants' Amended Reply, p.8).

14         Under 28 U.S.C. §1927, the Court may require an attorney or *pro se*  plaintiff "who

15  so multiplies the proceedings in any case unreasonably and vexatiously....to satisfy

16  personally the excess costs, expenses and attorneys' fees reasonably incurred because of such

17  conduct."  28 U.S.C. §1927; *see also Wages v. Internal Revenue Serv.,* 915 F.2d 1230, 1235-

18  36 (9th Cir. 1990) (section 1927 sanctions may be imposed against a *pro se* plaintiff).   A

19  vexatious multiplication of the proceedings occurs when the party acts recklessly or with bad

20  faith. *B.K.B.*, 276 F.3d at 1107. Before a court imposes sanctions under section 1927, the

21  offending party must be given notice and an opportunity to be heard. *T.W. Elec. Serv., Inc.*

22  *v. Pacific Elec. Contractors*, 809 F.2d 626, 638 (9th Cir.1987).

23         Additionally, the Court may impose sanctions pursuant to its inherent powers.  *See*

24  *Primus Automotive Financial Services Inc., v. Batarse,* 115 F.3d 644, (9th Cir. 1997).  "'[F]or

25  purposes of imposing sanctions under the inherent power of the court, a finding of bad faith

26  does not require that the legal and factual basis for the action prove totally frivolous; where

27  a litigant is substantially motivated by vindictiveness, obduracy, or *mala fides*, the assertion

28  of a colorable claim will not bar the assessment of attorney's fees.'" *B.K.B., 276 F.3d at 1091

1   (*quoting Fink v. Gomez,* 239 F.3d 989, 992 (9th Cir. 2002)) (internal quotation marks

2   omitted). While it is true that this is the third lawsuit initiated by Plaintiff with regard to his

3   employment at Securaplane, it appears that this is the first instance in which Plaintiff has

4   tested his theory regarding alleged EEOC and ADA violations.[10]  That Plaintiff chose not to

5   advance such claims in his earlier lawsuit does not, alone, render him subject to sanctions in

6   the instant action under either section 1927 or the Court's inherent powers.  Defendants

7   contend that Plaintiff's submission of his First Amended Complaint after the filing of their

8   Motion to Dismiss constitutes ongoing harassment. (*See* Defendants' Amended Reply, p.3).

9   Although submission of the First Amended Complaint did not cure the deficiencies pointed

10  out in Defendants' Motion to Dismiss, Plaintiff was entitled to file an Amended Complaint

11  as of right pursuant to Fed.R.Civ.P. 15(a)(1)(B).   This is not a case wherein Plaintiff has

12  multiplied the proceeding by repeatedly filing papers that did not materially differ from

13  papers which the court had already concluded were insufficient.  *See Wages,* 915 F.2d at

14  1235-36.   Further, although it is clear that Plaintiff believes he has been wronged by

15  Defendants relating to his former employment, at this juncture in the instant proceeding, the

16  record does not support the conclusion that Plaintiff's actions are substantially motivated by

17  vindictiveness, obduracy, or *mala fides*.   Accordingly, sanctions are not warranted at this

18  time.

19  **III.    CONCLUSION**

20          For the foregoing reasons, Plaintiff's First Amended Complaint should be dismissed.

21  Because the deficiencies in Plaintiff's First Amended Complaint cannot be cured by further

22  amendment, Plaintiff's First Amended Complaint should be dismissed without leave to

23  amend.   Additionally, Defendants' request for sanctions should be denied as unsupported

24  by the instant record at this time.

25

26          [10]The parties' briefs indicate that the other two actions are presently pending in state

27  court. (*See* Defendants' Amended Reply, p. 3 n.2 (one action has been pending since March
    2009, and the other was filed in October 2010); Plaintiff's Supplemental Response, p. 4

28  (same)).

1   **IV.    RECOMMENDATION**

2         For the foregoing reasons, the Magistrate Judge recommends that the District Court

3   grant Defendants' Motion to Dismiss (Doc. No. 13) and dismiss Plaintiff's First Amended

4   Complaint without leave to amend.

5         Pursuant to 28 U.S.C. §636(b) and Rule 72(b)(2) of the Federal Rules of Civil

6   Procedure, any party may serve and file written objections within fourteen (14) days after

7   being served with a copy of this Report and Recommendation.  A party may respond to

8   another party's objections within fourteen (14) days after being served with a copy.

9   Fed.R.Civ.P. 72(b)(2). If objections are filed, the parties should use the following case

10  number: **CV 10-587-TUC-DCB.**

11        Failure to file timely objections to any factual or legal determination of the Magistrate

12  Judge may be deemed a waiver of the party's right to *de novo* review of the issues.  *See*

13  *United States v. Reyna-Tapia,* 328 F.3d 1114, 1121 (9th Cir.) (*en banc*), *cert. denied,* 540 U.S.

14  900 (2003).

15        DATED this 29th day of June, 2011.

16

17  _____

                    Héctor C. Estrada

18                  United States Magistrate Judge

19

20

21

22

23

24

25

26

27

28